UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOSHUA TAYLOR, | ) |
|                Petitioner, | ) ) ) |
|        v. | )    No. 2:19-cv-00422-JPH-DLP |
| HYHETTE, | ) ) ) |
|                Respondent. | ) |

**Order Denying Petition for Habeas Corpus
and Directing Entry of Final Judgment**

Indiana prison inmate Joshua Taylor petitions for a writ of habeas corpus challenging a prison disciplinary sanction imposed in disciplinary case number MCF 19-04-0718. For the reasons explained in this Order, the habeas petition is denied.

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

### B. The Disciplinary Proceeding

On April 30, 2019, Indiana Department of Correction ("IDOC") Officer Seger wrote a Report of Conduct charging the petitioner with disorderly conduct, a violation of IDOC Adult Disciplinary Code B-236. Dkt. 9-1. The Report of Conduct states:

> On 4/30/19 at approximately 07:10am I, Officer Seger was assigned to Phase 2 Yard. Assistance was called to OSB2 for Offender Taylor, Joshua 160810 L445 being non-compliant inside the waiting room area. Offender Taylor was advised [to] return the green sock cap he had in [his] possession due to it being unauthorized property at this time. Offender Taylor refused to comply with direct orders and was then ordered to remove his altered sweater that had a hood sewn on it. Offender Taylor continued to refuse direct orders given to him by myself. I then advised Offender Taylor to submit to mechanical restraints in-which [sic] he became resistive [sic] and he again was given a verbal order to lay on the ground and place him [sic] hands behind his back for application of mechanical restraints. Offender Taylor was escorted back to the unit and placed inside his cell. Upon attempt[ing] to remove mechanical restraints Offender Taylor then trusted [sic] his hands inside his cell refusing to comply with the removal of restraints attempting to have his bunkie utilize his tablet to contact family members for him. Offender Taylor was given 6 direct orders to place his hands out for restraint removal and Offender Taylor refused to comply.
>
> Restitution is requested for the chemical agent utilized to gain compliance of Offender Taylor, Joshua 160810 L445.

*Id.*

On May 5, 2019, the petitioner was notified of this charge when he was provided a copy of the Screening Report. Dkt. 9-2. He pleaded not guilty and requested a lay advocate. *Id.* He requested witness statements from Offender Michael Jones and Officer Torres. *Id.* He requested a copy of the video evidence and wanted to know which officer sprayed him. *Id.*

Michael Jones provided the following written witness statement: "Taylor didn't do nothing wrong. I was the one who had the hat and I didn't want to give it to them. They should [have] never messed with Taylor." Dkt. 9-3, p. 3.

Officer Torres provided the following written witness statement: "I cannot recall if he left with a hat on or not, and when they brought him back to his cell, I was not sure why they escorted him back until much later." *Id.* at 4.

The petitioner was not allowed to view the video evidence, but H. Winegardner provided the following report summarizing its contents:

> I (H. Winegardner) reviewed the DVR of LHU 3/4 on 04/30/2019 starting at Approx 7:16 AM as requested by Offender Taylor, Joshua DOC 160810 in regards to case MCF 19-04-0718.
>
> DHB staff watched at 7:16 but it appeared the incident had already started. I moved the camera back to 7:12 AM. At 7:12:26 AM Offender Taylor is seen being escorted on unit by 2 staff. At 07:12:44 AM Offender Taylor is placed in the cell. Ofc Seger is seen trying to remove restraints. 3 more staff arrive on scene. 7:13:39 AM multiple staff are in and out of the cuff port. At 7:15:45 AM staff are seen putting on gloves as Officer Pelphrey walks away from the cuff port. At 7:17:00 AM offender Taylor and his cell mate are removed from the cell.

Dkt. 9-3, p. 2.

The respondent has filed a copy of the video as an *ex parte* exhibit in this action. Dkt. 14. The Court, having reviewed the video, finds that the video does not clearly or directly contradict either the Report of Conduct or the video summary. The video provides an overhead, fisheye view of the of the petitioner's housing unit. *Id.* Prison officials walk a restrained inmate to his cell, which is located on the bottom edge of the video. *Id.* The video does not capture the inmate's behavior within the cell. *Id.* Over the next few minutes, several other guards approach the cell. *Id.* Within a few minutes, the inmate and his cellmate are removed from the cell in restraints. *Id.*

On June 3, 2019, this matter proceeded to a disciplinary proceeding. Dkt. 9-3, p. 1. The petitioner told the disciplinary hearing officer that he was not disorderly, did not receive the

3

witness statements he requested,[1] and did not receive the video summary. *Id.* The petitioner has presented documentary evidence, signed by his lay advocate, indicating that the video summary was not provided to him until the disciplinary hearing had already begun. Dkt. 2-1, p. 6. The disciplinary hearing officer considered the petitioner's statement, the Report of Conduct, and the video summary and found the petitioner guilty. Dkt. 9-3, p. 1. The petitioner received a deprivation of 90 days earned credit time and a demotion in credit-earning class. *Id.*

The petitioner appealed his disciplinary conviction to the Facility Head and the IDOC Final Reviewing Authority. Dkts. 9-4, 9-5. These appeals were denied. *Id.* He then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## C. Analysis

The petitioner raises three grounds for relief, which the Court restates as: (1) he was not provided with a copy of the video summary before the disciplinary hearing; (2) the staff reports admitted against him were falsified to coverup prison staffs' excessive force; and (3) the disciplinary hearing officer imposed excessive sanctions and found him guilty to coverup her friend's use of excessive force. Dkt. 2, p. 3.

### 1. Video Summary Report and the Right to Adequate Written Notice

The petitioner argues that prison officials violated IDOC policy by failing to provide him with a copy of the video summary at least 24 hours before the hearing. A violation of IDOC policy during a disciplinary proceeding is not a basis for habeas relief unless it overlaps with one of the due process rights outlined in *Wolff* and *Hill. See, e.g.*, *Keller v. Donahue*, 271 F. App'x. 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of

---

[1] The instant petition does not raise the failure to provide exculpatory witness statements as a ground for relief. *See generally* Dkt. 2.

addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process").

The alleged violation of IDOC policy in this case implicates the petitioner's right to adequate notice of the disciplinary hearing under *Wolff* and *Hill*. Due process requires that an inmate be given advanced "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citations and quotation marks omitted).

The petitioner was provided with the Report of Conduct on May 5, 2019. Dkt. 9-2. This report informed the petitioner that he faced a charge of disorderly conduct and summarized the alleged facts underlying that charge. Although the video summary corroborates the allegations in the Report of Conduct, the video summary itself does not allege additional facts against the petitioner.[2] Under these circumstances, the failure to provide the petitioner with the video summary before the disciplinary hearing did not violate his right to notice under *Wolff*. Accordingly, his request for relief on this ground is **denied**.

---

[2] To the extent the petitioner argues that withholding the video summary prior to the disciplinary hearing violated his right to exculpatory evidence, this argument fails because the video summary is not exculpatory. The video summary does not directly contradict or undermine the reliability of other evidence in the record supporting the petitioner's guilt. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires access to witnesses and evidence that are exculpatory); *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 2011) ("Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt.").

### 2. Falsified Staff Reports and Sufficiency of the Evidence

The petitioner argues that prison officials falsified staff reports to cover up their use of excessive force. In support, he claims that the Report of Conduct is contradicted by the video summary. Upon review, the Court finds that these reports do not contradict one another. While the Report of Conduct describes the events in more detail, and also describes events that took place outside the petitioner's housing unit, the video summary essentially rehashes events within the housing unit as they are described in the Report of Conduct.

To the extent the petitioner argues that he should not have been found guilty on the evidence presented, the Court finds that the Report of Conduct, video summary, and video evidence provide sufficient evidence to support the disciplinary conviction. *See Ellison*, 820 F.3d at 274 ("[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary."); *Moffat v. Broyles*, 288 F.3d 978, 981 (2002) (holding that the "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard); *Hill*, 472 U.S. at 455-56 ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (holding that the Report of Conduct alone may provide some evidence to support the disciplinary conviction if the report "describes the alleged infraction in sufficient detail.").

Accordingly, the petitioner's request for relief on this ground is **denied**.

### 3. Disciplinary Hearing Officer

The petitioner's arguments regarding the disciplinary hearing officer are two-fold. First, he argues that the disciplinary hearing officer was biased because she was trying to cover up a friend's

use of excessive force. Second, the petitioner argues that the disciplinary hearing officer imposed unduly burdensome sanctions. The Court addresses each of these arguments in turn.

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666-67 (7th Cir. 2003). Hearing officers may be deemed impermissibly biased when they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* Although the Seventh Circuit has suggested that an inmate may be unlawfully denied the right to an unbiased decisionmaker if the hearing officer's spouse is a crucial witness, *see Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002), this suggestion has not been extended to other relationships such as friends or coworkers.

In this case, the petitioner's argument that the disciplinary hearing officer may have been biased against him because she wanted to cover up a friend's excessive force does not overcome the strong presumption that the disciplinary hearing officer executed her duties with honesty and integrity.

The petitioner's 90-day deprivation of earned credit was the maximum sanction he could receive for a Class B violation of the IDOC Adult Disciplinary Code. Dkt 9-6, p. 2. "[A] federal court will not normally review a state sentencing determination which, as here, falls within the statutory limit," unless the sentence violates the Eighth Amendment by being an "extreme" punishment that is "grossly disproportionate" to the offense. *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997).

The Report of Conduct alleges that the petitioner engaged in disorderly conduct twice—once in a waiting area, and again in his housing unit. Under these circumstances, a 90-day deprivation of earned credit time does not violate the Eighth Amendment.

Accordingly, the petitioner's request for relief on this ground is **denied**.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles the petitioner to the relief he seeks. Accordingly, the petition for a writ of habeas corpus must be **denied** and the action dismissed.

**SO ORDERED.**

Date: 1/28/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOSHUA TAYLOR
160810
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
katherine.cornelius@atg.in.gov